Nelson, J.,
delivered the opinion of the Court.
A decree was pronounced by the Circuit Court of Carroll county, at its December Term, 1852, in the case of James S. Thompson by his father and next friend, ex parte, in which it was recited that the said James S. was an infant about eight years of age; that certain lands had descended to him; that, for various reasons stated in the decree, it was manifestly to his advantage that said lands should be sold, and the “ Clerk and Master” was accordingly directed to sell them at public, or private, sale, etc., and make report, etc. Such further proceedings were had in said cause, that at the August Special Term, 1853, a further decree was pronounced in said cause, reciting that Joseph "W". Mebane had purchased, and paid for, the tract therein described, containing two hundred and forty-four acres and one hundred and fifty-two poles, and divesting the title out of .him, and vesting the same, in fee, in said Mebane, who has since held *372 possession of the land, and made valuable improvements thereon. This bill was filed 1st December, 1868, to set aside the sale on the ground that the defendant was a minor until within- two years before the filing of his bill; and, as there is no controversy as to the facts, the principal question before the Court is, whether the Circuit Court had jurisdiction to order the sale, and to divest and vest title? The solution of this question depends upon the construction to be given to the statutes which were in force at the time of the proceeding. By the Act of 1827, c. 54, Car. & Nic., 516, it was provided, “that where the heirs or legal representatives of any deceased person shall inherit any real estate, and the same shall be so situated that partition thereof cannot be made in the mode now pointed out by law, or where such estate may be of a description, that it would be manifestly for the advantage of the heirs, or legal representatives, of such deceased persons that the same he sold, it shall and may be lawful for any person or persons, entitled to any part of such estate, to file his bill in the Circuit or Chancery Courts of the county or district where such lands may be situated, and, upon satisfactory proof that such real estate cannot be equally divided among those entitled thereto, or that it would be manifestly for the interest of such heir, or representatives, that the same should be sold, the said courts may proceed to decree that the same be sold upon such terms and conditions as may seem most for the interest of *373 the parties.” The second section of said act directed that the proceeds of sale should be divided among the parties entitled thereto in the same proportions that they were entitled to of the real estate sold. The third section provided for the investment of the funds of minors arising from such sales. The fifth section directed that suits prosecuted under the act should be conducted as other suits in equity, and that the purchaser at any sale authorized by it, should acquire a good and sufficient title in fee simple.
It is insisted for the complainant, that the Act of 1827 was not intended to confer upon the circuit courts jurisdiction to convert the real estate of minors into personalty in all cases in which it might be regarded as advantageous to their interests, and that it was intended only to authorize sales in place of partition between tenants in common. The position thus assumed is, in the opinion of this Court, correct. The cases of Brown ex parte, 8 Hum., 200; Morris v. Richardson, 11 Hum., 394; Davidson v. Bowden, 5 Sneed, 130; and Rogers v. Clark, 5 Sneed, 665, are relied upon by defendant’s counsel, as sustaining a different view of the question. Before considering these cases, it is proper to observe, that the Act of 1827, c. 54, was, by its terms, limited to the heirs, or legal representatives, of any deceased person who should inherit any real estate, and that by the Act of 1829, c. 35, Car. & Nic., 517, its provisions were extended to any real estate held by two or more *374 persons as tenants in common, or as tenants in coparcenary; and tbe two statutes received a partial construction prior to tbe cases cited for tbe defendant.
In Norment v. Wilson, 5 Hum., 311, it was beld that “neither act contemplates tbe partition by sale of reversionary interests, or interests in remainder, especially as to minors, and these acts can have no amplitude of construction from their nature.” It was said, further, in that case, that tbe Act of 1827, is limited in its provisions to heirs and estates in land, inherited by them, and that “the Act of 1829 extends to tenants in common, in deed,[1] and to tenants in coparcenary.” In Helm v. Franklin, 5 Hum., 405, Judge Green, in delivering the opinion of the court quoted the words by which it was provided that when it is shown that the property cannot be equally divided among those entitled thereto, or that it would be manifestly for their interest that it should be sold, and- said, “the meaning of this latter expression is, that it is manifestly for the interest of the parties, in order to make 'partition, that the estate be sold, it shall be so ordered.” This view of the statute was, manifestly, taken by Judges Caruthers' and Nicholson, in their compilation of our statutes, as they place the Acts of 1827 and 1829, under the title “Partition,” in that work. The words “heirs”— partition — and “ cannot equally be divided ” — in the *375 first section of tbe Act of 1827; tbe provisions in tbe second section, as to . tbe division of proceeds among the parties entitled thereto; and in tbe third section, as to tbe funds belonging to minors, arising from tbe sales authorized, all show, conclusively, that tbe sale of land belonging to a single owner, and foi tbe purpose of conversion merely, was not contemplated by the Legislature; and that the cases intended to be provided for were cases in which tbe ownership was in more persons than one; that is, in heirs, legal representatives, tenants in common, and tenants in coparcenary; and that . tbe object was to authorize a sale, in lieu of partition, or where it was manifestly to tbe advantage of tbe owners.
This construction is aided by the Act of 1835, e. 20, s. 1, which gave tbe Chancery Courts exclusive jurisdiction of all cases in equity, “ except petitions or bills for tbe partition or sale of real estate, by administrators, executors, guardians, heirs or tenants in common,” etc., of which it was declared that tbe Circuit and Chancery Courts should have concurrent jurisdiction: Car. & Nic., 230. Although the word “heirs” is nomen collectivuw,, and would, under the usual rules of interpretation, be held to mean one or more persons, yet, employed as it is, in connection with the words “partition or sale,” and in juxtaposition with the words “tenants in common,” it is manifest that a sale for partition, and not for conversion merely, was intended. Under the Act of 1762, c. 5, s. 13, a regular guardian *376 could not let or farm out the land of his ward for “a longer term than the orphan be of age;” and by the Act of 1789, c. 39, s. 5, he could not sell the ward’s real estate for the payment of debts, without the order of a circuit or chancery court, particularly specifying the property to be sold: See Car. & Nic., 368, 370.
In view of these acts, it is not to be presumed that the intention of the Acts of 1827 and 1835, was to authorize the sale of a minor’s real estate in an ex parte proceeding, and ■ at the instance of any one who might choose to assume the character of his next friend.
It has been asserted by high authority, and after a most careful review of English and American cases, that a court of chancery has no jurisdiction to direct the sale of an infant’s real estate, even for his maintenance or education, and that the power rests alone with the legislature: See Williamson v. Berry, 8 How., 495; 3 Lea. Ca. in Eq., 3rd Am. ed., 249; McPherson on Infants, § 5, 297, marg. On the other hand, it is maintained by Mr. Justice Story, that guardians may, under particular circumstances, and where it is manifestly for the benefit of the infant, change the nature of the estate; and the courts will support their conduct, if the act be such as the court itself would 'have done under the circumstances, by its own order: 2 Sto. Eq. Jur., § 1357, 4th ed. It was, probably, in view of this conflict in the authorities, that Judge Turley said, *377 in Brown’s case, that the courts were prepared, though not without some difficulty, to assert such jurisdiction: 8 Hum., 207. Considering, however, that the reluctance of the English Chancery Court originated, doubtless, in the desire to maintain the system of preserving real estates in the same line of succession, and that perpetuities, monopolies, and forfeitures were abolished by our State Constitution; that entails, and the right of primogeniture were destroyed at an early period, by the Act of 1784, and that by the Act of 1835, chancellors were clothed with the same powers, privileges and jurisdiction, in all respects, that the chancellors then had by the existing laws, and that were properly and rightfully incident to a court of chancery, agreeably to the laws then in force, not inconsistent with the Constitution, (Car. & Nic., 225,) we have no hesitation in declaring that á court of chancery had general jurisdiction, aside from the Acts of 1827 and 1829, over the estates, as well as the persons of infants, and could, under appropriate circumstances, and for proper purposes, direct the sale of their real property: See 2 Sto. Eq., § 1357; Taylor v. Keeton, 10 Hum., 539. But, as has been seen, we do not concur in the reasoning of. Judge Turley in Brown’s .case, 8 Hum., 208. That ease originated in the Chancery Court, and an opinion as to the powers of the Circuit Court was not essential to its determination: but the question in another form was expressly determined, in favor of the jurisdic *378 tion of tbe Circuit Court, on a demurrer to tbe petition in Morris, Adm'r v. The Widow and Heirs, 11 Hum., 514.
In Morris v. Richardson, a petition was presented in tbe Circuit Court by a guardian, in wbicb tbe widow and tbe minors, by their next friend, joined for the partition of real estate, and tbe sale of slaves in lieu of partition, and tbe sale of tbe slaves was set aside for tbe reasons specially stated in tbe opinion. In that case, tbe jurisdiction was sustained, but it was observed that tbe “power conferred upon tbe Circuit Courts by tbe statute is limited, and, as • we have bad occasion before to state, is to be regarded as a special jurisdiction:” See 11 Hum., 394. In Rogers v. Clark, tbe proceeding under wbicb tbe minor’s land was sold, was bad in tbe Chancery Court, and tbe sale was sustained, and delared to be a conversion, out and out, into personalty. It is declared, in tbe opinion in that case, that “ a court of chancery cannot, by its original inherent jurisdiction, change tbe nature of an infant’s estate, so as to convert real into personal, as we have recently held. But this may bo done under tbe Act of 1827, in tbe mode and to tbe extent therein provided:” 5 Sneed, 668. It is not necessary for tbe purposes of tbe case before us, to express an opinion as to tbe doctrine of conversion held in Rogers v. Clark, wbicb is in apparent conflict with tbe previous case of Taylor v. Keeton, in wbicb Judge Totten, without expressing any opinion,. cited several authorities to show that, *379 when, laud is purchased with the infant’s personal estate, the land is personal estate; and, on the other hand, that land turned into money is real •estate: See 10 Hum., 539, 540. But in the case of Davidson v. Bowden, which was a bill filed by purchasers, to be believed of their purchase of a tract of land sold in chancery in accordance with an ex parte petition by a widow and eight children, six of whom were minors, the complainants were discharged from their purchase by a decree of this . Court, partly because there was no “ satisfactory proof” as to the propriety, or necessity, of the sale, but chiefly because it was held that the proceeding should have been by a bill in regular form, and that the infant heirs should have been made defendants; and forcible reasons are assigned why they should be made defendants, and not joined as complainants with adult parties, whose interests, as tenants in common, are often in direct opposition to the true interests of the minors: See, also, Reid ex parte, 2 Sneed, 380, 381; Kirkman ex parte, 3 Head, 518; Winchester v. Winchester, 1 Head, 493.
Although the reasoning of the Courts in some of the cases seem to be in conflict with the view we entertain as to the true construction of the Acts of 1827 and 1829, yet it may be remarked of the cases cited,- that those were commenced in the Chancery Court; one was a petition by administrators; another a joint petition for partition and sale by a guardian, minors and a widow; and another a bill by, an administrator to obtain the *380 direction of tbe Chancery Court as to tbe distribution of tbe proceeds of tbe sale of an infant’s land. But in neither of the cases was tbe question presented, or adjudicated, which is here to be determined. We hold that tbe Acts of 1827 and 1829, so far as they related to tbe Chancery Court, were merely “declaratory of its original and inherent power;” and so far as they related to tbe Circuit Court, were merely intended to authorize a sale for tbe purposes of partition, and not to confer upon that Court tbe power to sell tbe real estate of a minor, merely for tbe purpose of converting it into personalty. This power belongs exclusively to a Court of Chancery, whose mode of procedure is better adapted to its exercise than that of a Circuit Court, tbe jurisdiction of which is chiefly confined to cases at law, and was not intended to be equal to, or concurrent with, that of Chancery, except to a very limited extent.
In this view it is not necessary to scrutinize the reasons assigned in the decree of the Circuit Court for directing the sale of complainant’s land, or to comment upon tbe absence of the petition and depositions of witnesses, if any, under which the sale was ordered. The decree recites that the case was heard “on the petition and evidence introduced before the Court,” from which it may be inferred that witnesses were examined in open court, as was the practice in some -of the Circuit Courts at the period when the sale was authorized. The statutes never contemplated such a mode of *381 procedure, and expressly directed that tbe suits should be conducted as other suits in equity. It was, obviously, the intention that depositions should be taken, as in other Chancery cases, so that the evidence might be presented upon which the action of the Court was based, in so grave a procedure as that of depriving minors of their inheritance. It is charged in complainant’s bill that he never received one cent of the proceeds arising from the sale, and stated in the answer that the money has remained in the hands of the commissioner ever since it was paid, which was probably fifteen years before the filing of the bill. No explanation is given of this unusual circumstance, but there is nothing in the record to show that defendant did not act in good faith in purchasing and paying for the land. There is no error in the interlocutory order disallowing the demurrer, as the defendant’s purchase forms a cloud upon complainant’s title. It is alleged in the answer, and shown in evidence, that the defendant has made valuable improvements on the land, for which, as he acted in good faith, compensation shall be made in the usual mode. Let a decree be entered reversing the decree of the Chancellor, declaring that the sale of complainant’s land was utterly null and void, divesting defendant’s title, and remanding this cause to the Chancery Court at Huntingdon, where an account shall be taken under the direction of the Chancellor, in which the defendant shall be charged with the annual value of the rents and profits of *382 the land, with interest thereon from the end of each year from the confirmation of the sale, and also with the value of the timber used by him; and let the defendant ■ be credited, not with the cost, but the present actual value of all permanent improvements or betterments really enhancing the value of the land.
The costs of this cause in this Court and the Court below will be adjudged against the defendant.
Jas. D. Porter for defendant filed a petition for re-hearing, which was, on the 13th day of May, 1871, by the court denied.

 Quere, in land ?